IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 3, 2003 Session

## ERIK MAASIKAS v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

Appeal from the Chancery Court for Davidson County
No. 01-2424-III     Ellen Hobbs Lyle, Chancellor

No. M2002-02652-COA-R3-CV - Filed December 22, 2003

Appellant, a former Metropolitan Nashville police officer, appeals an adverse judgment of the Chancery Court of Davidson County wherein that court affirmed the decision of the Metropolitan Civil Service Commission imposing a two-day suspension for a disciplinary infraction. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J.,M.S., and FRANK G. CLEMENT, JR., J., joined.

Worrick G. Robinson, Nashville, Tennessee, for the appellant, Erik Maasikas.

Wm. Michael Safley, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

### OPINION

Erik Maasikas was a Metropolitan Nashville police officer from November 1, 1994 until his termination on January 12, 2000.

On December 8, 1999, Donald W. Adcox, supervisor of patrolman Maasikas, filed an internal incident report charging:

Officer Maasikas turned in an activity sheet for 11-14-99 with missing or incomplete complaint numbers. I and Lt. VonDohlen talked to him and told him we expected his activity sheets and tachs to be completed correctly. On Friday 11-26-99 Officer Maasikas turned in an activity sheet and tachograph with no activity recorded on the tachograph. His explanation (sic) was the tach door came open. On Friday

12-03-99 Officer Maasikas turned in an activity sheet for 11-28-99 with no tach chart attached. His explanation (sic) was he had lost it.

Supervisor Adcox recommended that a two day suspension be imposed on Officer Maasikas for these infractions, and this recommendation was approved by reviewing supervisors. Officer Maasikas declined to accept the two-day suspension, and, in February 2000, a disciplinary hearing was held before Chief Emmet Turner and other members of the Disciplinary Board of the Metropolitan Police Department. Following this hearing, Maasikas was found guilty of violating General Order 95-19-IV(r), General Order 97-15J(2) and Civil Service Rule 6.79(11) involving tachograph violation. Maasikas received a two day suspension[1] and promptly appealed to the Metropolitan Civil Service Commission.

On appeal, extensive hearings were held on July 6, August 11, September 12 and September 22, 2000, before Administrative Law Judge Ralph B. Christian, II. The Administrative Law Judge upheld the two-day suspension for the tachograph violation, and, in a final order entered June 25, 2001, the Civil Service Commission also upheld the two-day suspension. Maasikas filed, pursuant to Tennessee Code Annotated section 4-5-322, a Petition for Judicial Review of the Civil Service Commission Final Order.

In this Petition for Judicial Review, Maasikas alleges:

1. The Administrative Judge incorrectly surmised that the Grievant's actions were intentional, not mistakes or misfortunes of the job as shown by the proof.
2. The Administrative Judge incorrectly suggests and presumes that the tachograph was functioning properly when testimony was otherwise present.
3. The Administrative Judge incorrectly considered evidence that the tachograph disk was turned in to cover the Grievant's alleged absence when Grievant was not charged or disciplined for absence.
4. The Administrative Judge incorrectly suggests that the Grievant had been less than truthful in his past dealings with his employer.
5. The Administrative Judge failed to consider proof that the Grievant was treated differently, as was the testimony from his supervisor.
6. The Administrative Judge placed over emphasis on the Grievant's past employment record. While his past employment record is circumstantially relevant, the Grievant was never disciplined for a lost tachograph. He lost one tachograph in approximately 1995. Further, he was never disciplined for any problem twice.

---

[1] Maasikas was also charged with a pursuit violation and received a five day suspension, which was also considered by the Administrative Law Judge and the Civil Service Commission in the course of the appeal. Since both the Administrative Law Judge and the Civil Service Commission reversed and dismissed the pursuit violation and the five day suspension resulting therefrom, the pursuit violation will not be further considered.

7.      The Administrative Judge's punishment was excessive in light of all the facts.

While this two-day suspension is the subject of the present appeal, this two-day suspension is but the catalyst that brought about his termination from the Metropolitan Police Department. The Metropolitan Charter, section 12.05, provides that a civil service employee cannot be suspended more than thirty days during a twelve month period. Mr. Maasikas, on February 11, 1999, had received a two-day suspension for failure to appear in court and, on October 4, 1999, had received a twenty-eight-day suspension for filing a false Off-Duty Employment Report, violating the Off-Duty Employment Regulations, and turning in a tachograph and activity sheet indicating that he had ceased to work prior to the end of the work shift without permission to leave early. The effect of the two-day suspension relative to the tachograph violation in issue in this appeal was to trigger violation of the thirty day suspension rule resulting in his termination.

On April 30, 2002, Chancellor Ellen Hobbs Lyle entered a Memorandum and Order upholding the two-day suspension given by the Civil Service Commission. In this Memorandum and Order, the Chancellor held in pertinent part:

The Petitioner, Erik Maasikas, began employment in the patrol division of the Metropolitan Police Department ("Department") in 1994. During his tenure with the Department, the Petitioner was subject to discipline on seven separate occasions prior to the incidents giving rise to this matter. In 1996, the Petitioner received a one-day suspension for leaving his loaded shotgun unsecured in the trunk of his vehicle. Also in 1996, the Petitioner received a mandatory one-day suspension for damage done to a police car when his parked vehicle rolled backward into a pole. In December of 1997, the Petitioner received a one-day suspension and a year of probation for leaving his zone while on duty. Then, in April of 1998, the Petitioner received a two-day suspension for failing to complete an off-duty employment form No. 150. Later, in June of 1998, the Petitioner received a one-day suspension for stating that he could not be at roll call because he was at the Courthouse when, in fact, the Petitioner was at the Courthouse but not on official business. In February of 1999, the Petitioner received a two-day suspension for failing to appear for General Sessions Court on two separate occasions. In October of 1999, the Petitioner received a twenty-eight-day suspension for filing a falsified off-duty employment form and for violating the Department's twenty percent alcohol exclusion rule.

The incidents leading up to the suspension in the case at bar occurred in November of 1999 when the Petitioner returned to work following his twenty-eight-day suspension. On November 26, 1999, the Petitioner turned in an activity sheet for the evening of November 25, 1999 with a blank tachograph attached and explained that the tachograph door had popped open. One week later, on December 3, 1999, the Petitioner turned in an activity sheet for the evening of November 28, 1999 without attaching a tachograph and explained that the tachograph had been

inadvertently discarded by a car wash attendant when he had his personal vehicle cleaned. The Petitioner received a two-day suspension.

On April 12, 2001, the ALJ issued an initial order upholding the Petitioner's two-day suspension. The initial order became final on June 12, 2001 when the Civil Service Commission voted to uphold the ALJ's decision and a final order was entered on June 25, 2001. It is from this order that the Petitioner appeals.

. . . .

The Petitioner contends that the Civil Service Commission erred in disregarding the following facts: 1) police officers commonly lose tachographs; 2) the loss of a tachograph most likely will not result in a suspension; and 3) the Petitioner lost only one tachograph since joining the Department in 1994. Consequently, the Petitioner contends that the Commission acted arbitrarily and capriciously in taking into account the Petitioner's disciplinary record in determining the severity of the Petitioner's punishment for violating General Order No. 97-15, Section IX, Part (J)(2) which states, in pertinent part:

> Personnel using vehicles with tachographs shall adhere to the following provisions. Tachograph charts . . . shall be turned in to the supervisor at the beginning of the next shift the employee works.

Additionally, General Order No. 97-15, Section IX, Part (J)(3) states, in pertinent part:

> Supervisors may initiate corrective and/or disciplinary action for violations of the tachograph policy, if warranted.

Corrective action, according to Metropolitan Government of Nashville and Davidson County Civil Service Rule 6.3, takes the form of a written or oral reprimand and is distinguished from the disciplinary actions of suspension, demotion and dismissal set forth in Civil Service Rule 6.5. Therefore, pursuant to General Order No. 97-15, Section IX, Parts (J)(2) and (3) and Civil Service Rule 6.5, an officer's violation of the Department's tachograph policy, if warranted, could result in the supervisor's initiation of the disciplinary action of suspension. Likewise, there is no evidence in the record to indicate that the Commission lacks the authority to impose the disciplinary action of suspension on an officer for violating the Department's tachograph policy.

Therefore, with the Commission having the authority to impose a suspension for the violation of the Department's tachograph policy, the issue is whether the Commission acted arbitrarily and capriciously in considering the Petitioner's disciplinary record as its basis for upholding the Petitioner's two-day suspension. Although the Commission made findings that police officers commonly lose tachographs and, most likely, will not be subject to suspension for such an offense, it took into account the Petitioner's extensive record of failing to follow

Departmental rules and procedures in imposing the disciplinary action of suspension. The Court cannot conclude that the Commission's analysis is one that is not based on any course of reasoning or constitutes a clear error in judgment.

The Petitioner offered testimony from several witnesses that the standard punishment for failing to turn in a tachograph is the corrective action of an oral or written reprimand. Despite evidence in the record establishing the rarity of disciplinary action for failing to turn in or losing a tachograph, the Court holds that the Commission has the authority to impose the disciplinary action of suspension for violation of General Order No. 97-15, Section IX, Part (J)(2). Likewise, the Court holds that the Commission, in accordance with General Order No. 97-15, Section IX, Part (J)(2), Civil Service Rules sections 6.3 and 6.5 and the doctrine of progressive discipline, as codified in Tennessee Code Annotated section 8-30-330, retains the discretion to determine the appropriate level of discipline. Therefore, in consideration of the proscription of the Court to substitute its judgment for that of the agency, in consideration of the Commission's authority to impose the disciplinary action of suspension for violating the Department's tachograph policy and in consideration of the Petitioner's recurring disciplinary issues, the Court finds that the Petitioner has failed to prove that the decision below is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.

Thereafter, Appellant filed a Motion for a New Hearing based essentially upon the alleged applicability of the Doctrine of Progressive Discipline codified in Tennessee Code Annotated section 8-30-330. This Motion was overruled by Order of September 20, 2002, providing in pertinent part:

The record established that the petitioner had multiple disciplinary matters. Prior to the tachograph incidents, the petitioner was subject to discipline on seven occasions. The incidents included leaving his loaded shotgun unsecured in the trunk of his vehicle and two incidents of failing to complete department forms and two incidents of not being present where he was suppose to be.

Certainly if the Commission did not believe the petitioner's claim that the tachograph incidents were negligent and instead concluded that the tachograph failures were orchestrated by the petitioner to cover up not being on duty, the two-day suspension is unquestionably reasonable. Unfortunately the Commission did not state its assessment of the petitioner's credibility. But even if it is assumed that the tachograph incidents were caused merely by petitioner's neglect, nevertheless the two-day suspension is reasonable in light of the petitioner's disciplinary record.

The theory of progressive discipline and sanctions for multiple offenders is that even if the subsequent offenses are lesser, those offenses carry heavier consequences because the offender's conduct continues to be deficient and prior discipline has not worked to prevent poor conduct. For this reason a subsequent

offense, even lesser, can not be considered in the vacuum of the circumstances of that one offense where the offender has a record of offenses.

> The case at bar is one where the tachograph incidents–even if negligent–allow for heavier penalties because of the history and record of prior offenses.

The familiar standard of review in this Court is provided by Tennessee Code Annotated section 4-5-322(h)(2001). Under this standard, this Court is not allowed to consider this matter *de novo*, but may reverse or modify the decisions of the Civil Service Commission only if they are "(1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion, or (5) Unsupported by evidence which is both substantial and material in the light of the entire record." *Id.*

This Court must refrain from substituting its judgment for that of the Civil Service Commission. *McCallen v. City of Memphis*, 786 S.W.2d 633, 641 (Tenn.1990). It cannot be said that the Administrative Law Judge did not analyze and re-analyze the extensive testimonial record in this case, the exhibits filed by the parties, and the law controlling the case. He carefully considered the past disciplinary record of Appellant in reaching his conclusion to uphold the two-day suspension. The Administrative Law Judge stated in part:

> Grievant's arguments would be well received if he had a pristine employment record. However, the record is replete with his past failure to follow police department rules and procedures. Moreover, the record suggests that the tachograph was not turned-in to cover his absence at the end of a shift. The record also reflects that Grievant has been less than truthful in his past dealings with his employer. Grievant must bear the burden of his employment record. He is ultimately responsible for providing the department with tachographs and activity reports. There is no evidence that the tachographs were faulty. Grievant negligently left a tachograph in his vehicle and exposed it to callous discard by a car wash attendant. The loss of the tachograph was Grievant's responsib[ili]ty (sic), not the department's. The police department warned and counseled Grievant following his 28-day suspension to follow the department's rules and procedures. He chose to disregard their counsel. Given the totality of the circumstances, the department has shown remarkable restraint. The two-day suspension is upheld.

As both the Administrative Law Judge and the Chancellor observed, we are not concerned in this case with the discharge from employment of Mr. Maasikas. We are only concerned with whether or not the two-day suspension for the tachograph violations is arbitrary and capricious or not supported by substantial and material evidence.

From the opening statement before the Administrative Law Judge, it is conceded by Metropolitan Government that the tachograph violation standing alone would be insufficient to justify the two-day suspension. The appeal must then stand or fall on the admissibility of Mr.

Maasikas' past disciplinary record and the use of that record to enhance the penalty for the tachograph violation. Appellant concedes the admissibility but questions the use of the disciplinary record for enhancement purposes.

The Supreme Court of Pennsylvania addressed this question in *In Re: Ditko's Appeal*, 123 A.2d 718 (Pa.1956). In that case, the police officer was charged with two counts of conduct unbecoming a police officer, with the first count charging such violation August 29, 1954 and the second count charging a similar violation on December 20, 1953. As to the December 20, 1953 incident, the officer had previously been warned, reprimanded and suspended for a period of five days. Said the court:

> The incident relating to conduct unbecoming a police officer set forth in the second charge resulted in appellant's being warned, reprimanded and suspended without pay by his superior officers for a period of five days. Were this the only charge considered by Council and established under the evidence, we would hesitate in finding that appellant was properly discharged. It is apparent that for the offense in question appellant has already been punished, and it would offend against our concept of justice that a year thereafter appellant could be subjected to the penalty of dismissal after having previously been suspended for his actions. The service record of appellant showing prior misconduct and suspension is relevant and admissible, however, in so far as it may relate to proper punishment in the event appellant is guilty of the misconduct alleged in the first charge: *Poerio Appeal*, 3 Pa.Dist. & Co.2d 79; *In re Brosious Appeal*, 22 Northumb.L.J. 193. It would appear that appellant accepted without question the punishment meted to him by his superiors for the act of misconduct alleged in the second charge, and in our opinion that incident thereafter was closed and is only relevant in the matter of determining what punishment is merited for offenses subsequent thereto.

*In Re: Ditko's Appeal*, 123 A.2d at 720.

Pennsylvania has, likewise, held that a previous disciplinary record cannot be resurrected and used in the absence of a present new offense in order to discipline an employee anew. "The element of safeguarding fairness, implicit in *Ditko*, is that, after an employee has accepted one or more summary punishments, he should not be subjected to the resurrection and aggregation of those same infractions as the sole basis for enlarged punishment." *Siler v. City of Harrisburg*, 422 A.2d 704, 706 (Pa.Commw.Ct.1980).

In a similar context, the Court of Appeals of Louisiana held:

> Appellant was not dismissed because of this incident alone but in consideration of his past record which showed that he was disciplined five times for failing to obey his foremen in two years preceding the present incident, in the year 1985 he was absent 25 days 5 hours without pay and was twice placed on probation

for bad attendance, and he was twice found to be negligent in caring for city equipment. In upholding appellant's dismissal the commission remarked: "In view of the poor employment history of appellant, we cannot say that dismissal in this case was inappropriate." He contends that the appointing authority was estopped from reviving these old incidents as grounds for further disciplinary measures because he was already disciplined for these infractions. In support of this contention he relies on *Department of Public Safety v. Rigby*, 401 So.2d 1017 (La.App. 1st Cir.1981).

> An employee cannot be disciplined a second time for the same offense, but previous offenses and the penalties may be considered in determining what is the appropriate penalty for a subsequent offense. It would be nonsensical for the appointing authority to be prohibited from considering that this appellant was disciplined five times previously for the same type of misconduct as he committed in this case as well as on four other occa[]sions (sic) and that the previous relatively slight penalties imposed upon him had little if any deterrent or rehabilitative effect on him. The Commission was correct in considering appellant's entire record in determining that dismissal was appropriate.

*London v. Parkway and Park Comm'n*, 503 So.2d 556, 557 (La.Ct.App.1987); *see also Jarrett v. Capital Area Legal Servs. Corp., Inc.*, 763 S.2d 698 (La.Ct.App.2000).

In this case, the past disciplinary record of Mr. Maasikas was properly used to enhance the penalty for conduct which, in the absence of such a disciplinary record, would probably have merited a reprimand.

It is also well to note that, from the day Mr. Maasikas, his attorney and Chief Emmet Turner agreed on the 28-day suspension of October 4, 1999, Mr. Maasikas knew what was going to happen if he had further disciplinary problems.

> Q.     Specifically looking at the most recent prior to this, which apparently took place on October 4 of 1999, it indicates that he was suspended for 28 days; is that correct?
> A.     That is correct.
> Q.     Now, in that regard, let me pass to you what's been identified as Exhibit 9. When you suspended Mr. Maasikas on this particular occasion for 28 days, did you give him any warning?
> A.     Yes, I did. That was in a letter dated October 4th, 1999.
> Q.     What did you tell Mr. Maasikas?
> A.     I'll read just the last part. It says, "This suspension, along with a previous two-day suspension, is the maximum number of days an employee may be suspended within the 12-month period. You have acknowledged that you understand that any other disciplinary action resulting in a suspension within this 12-month period would result in termination."

Q. You told him that on that occasion?

A. Yes, I did.

Q. Were you satisfied that he understood what the gravity of the situation was?

A. Yes, sir, I believe that he fully understood.

Q. Now, you set out in there that the most you can have of a suspension within a 12-month period is 30 days. Is that, in fact, pursuant to the Metropolitan Charter?

A. Yes, it is.

Q I'll pass to you what's identified as Exhibit 14. Is that the provision of the Metropolitan Charter which provides that 30 days is to be the most that someone can be suspended within a 12-month period?

A. Yes, it is.

Q. Did that particular provision play a part in the ultimate termination of Mr. Maasikas in reference to this charge?

A. Yes, it did.

On cross-examination of Chief Turner by the attorney representing Officer Maasikas, the record discloses:

Q. Chief, you alluded to the 28-day suspension that Officer Maasikas was given back in, I guess that was, October of 1999. You and I had a lengthy conversation in your office prior to that board hearing, did we not?

A. That's correct.

Q. About this disciplinary matter?

A. Right

Q. And the decision was whether or not you were going to give him - - as far as there being some type of arrangement without having a hearing, it was either 28 days or fire him, was it not? That as the dilemma?

A. That was the offer that you made, I believe.

Q. And that's what you accepted, right?

A. (No response.)

Q. And we did not have a hearing on that, did we?

A No, we did not.

Q. Okay.

A. May I allude a little further on this answer?

Q. Yes, sir, you may.

A. I think, Counselor, you and I are both aware that on that particular day, in the presence of Officer Maasikas, we both gave him the benefit of the doubt, and I think you and I both talked to him about what was expected of him when he returned to work. I think you are aware of the fact that we both talked to him and, I think, very vividly explained to him what our expectations were in the police department when he returned.

-9-

Q.     Yes, sir. With regard to his coming back and that conversation, Chief, I expressed some concern to you that he would not have the luxury of having a single day to give up in the disciplinary matter in the event something happened, and at the time, the department was giving one-day suspensions for wrecks in patrol vehicles, was it not?

A.     Yeah.  And I think I even told you if that did happen, that we would try to deal with that, that we wanted to give him the benefit of the doubt.

Under the standard of review binding upon this Court in Tennessee Code Annotated section 4-5-322(h), we can see no basis for disturbing the decision of the Civil Service Commission.  The judgment of the chancellor is affirmed.

Costs of this cause are assessed to Appellant, and the case is remanded to the chancery court.

_____
WILLIAM B. CAIN, JUDGE